UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| RICK ALLEN BLACK, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 2:20-cv-00130-JMS-MG |
| CHASITY PLUMMER LONG, et al., | ) | |
| Defendants. | ) | |

**Order Denying Motions for Summary Judgment and Directing Further Proceedings**

Plaintiff Rick Allen Black, an inmate at Plainfield Correctional Facility ("Plainfield"), brings this action pursuant to 42 U.S.C. § 1983 alleging that he was subjected to unconstitutional conditions of confinement. Defendants Rachel Houghton, Chasity Plummer Long, and Murat Polar ("Medical Defendants") and defendants Brown, Feltcamp, and Gagnog ("State Defendants") move for summary judgment arguing that Mr. Black failed to exhaust his available administrative remedies before filing this lawsuit. For the following reasons, the motions for summary judgment, dkt. [41] and [46] are **denied**.

**I. Standard of Review**

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the moving party has met its burden, "the burden shifts to the nonmoving party to 'come forward with specific facts showing that there is a *genuine issue for trial*.'" *Cincinnati Life Inc. Co. v. Beyrer*, 722 F.3d 939, 951 (7th Cir. 2013) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). A disputed fact is material if it might affect the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941–42 (7th Cir.

1

2016). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page,* 906 F.3d 606, 609–10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

## II. Statement of Facts

The following statement of facts was evaluated pursuant to the standards set forth above. That is, this statement of facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light most favorable to Mr. Black as the non-moving party. *See Barbera v. Pearson Education, Inc.,* 906 F.3d 621, 628 (7th Cir. 2018).

### A. Mr. Black's Detention in the Dry Cell

Mr. Black went to the Terre Haute Regional Hospital on May 23, 2018, for an MRI of his back. The MRI revealed what appeared to be a metal object in Mr. Black's anal cavity. Upon Mr. Black's return to Plainfield, he was placed in the infirmary and then a dry cell so prison staff could monitor him for possible contraband, though he denied having anything. Until May 25, Mr. Black was in the dry cell in unsanitary conditions with no access to running water, a shower, or cleaning supplies. As it turned out, the "metal object" was nothing more than a mark on the MRI. Dkt. 54-1 at 9. In its order screening Mr. Black's amended complaint, the Court identified a viable Eighth Amendment conditions-of-confinement claim. Dkt. 11 at 4.

### B. The Offender Grievance Process

Every inmate is advised of the grievance process during an orientation upon arrival to Plainfield. Dkt. 48-1 at ¶ 6. Inmates subsequently have access to a copy of the grievance process in the law library and on their electronic tablet. Dkt. 43-1 at ¶ 6. The grievance process provides a mechanism for inmates to express complaints regarding topics of concern within the facility,

including conditions of confinement. *Id.* at ¶ 4.

The grievance process in place at the time consisted of four steps. *Id.* at ¶ 8. First, the inmate must try to resolve his concern informally. Dkt. 48-2 at §§ IV, X. Second, if unable to resolve the issue informally, he must file a written grievance on State Form 45471 no later than ten business days after the incident. *Id.* at §§ IV, XI. Third, if the inmate was dissatisfied with the response to his written grievance, he must appeal the response in writing to the Warden or his designee within five business days. *Id.* at §§ IV, XII. Fourth, if the inmate was dissatisfied with the response to his appeal, he must appeal that response in writing to the Department Offender Grievance Manager within five business days. *Id.* at §§ IV, XIII.

### C. Mr. Black's Use of the Grievance Process

Jeremy Jones, the grievance specialist at Plainfield, reviewed Mr. Black's grievance records and located no grievances related to conditions of the dry cell.[1] Dkt. 48-1 at ¶¶ 2, 15. Mr. Black had filed grievances about other matters. *Id.* at ¶ 15; dkt. 48-3.

Mr. Black testified that he is aware of the grievance process and how it works, but he was unable to file a grievance about the dry cell conditions. Dkt. 54-1 at 40, ¶¶ 10–11, 15 (Black Affidavit). Mr. Black was released from the dry cell on Friday, May 25, 2018, the start of Memorial Day weekend. *Id.* at ¶ 7. Upon his release, he returned to general population where he asked Sgt. Acadelli and Officer Stevenson why he had not been moved back to the mental health unit.

---

[1] Among Mr. Black's exhibits is a "motion to strike" Mr. Jones's affidavit on the basis that Mr. Jones was not the grievance specialist at the time of the incident and therefore lacks personal knowledge about Mr. Black's efforts to grieve this incident. Dkt. 54-1 at 44–45. This should have been filed as a separate motion rather than included as an exhibit and is therefore not properly filed. *See* S.D. Ind. L. R. 7-1(a). Regardless, as the current grievance specialist, Mr. Jones is the custodian of grievance records and therefore can speak to what grievances have been recorded in the system or were filed in Mr. Black's offender packet. Dkt. 48-1 at ¶ 2. Therefore, the Court will consider his affidavit.

*Id.* at ¶ 5. He was told to speak with Miss Kinnaman (whose position is unclear) after the holiday weekend. *Id.* The officers would not provide Mr. Black any "request slips [or] medical slips" and would not otherwise help him. *Id.* at ¶¶ 5–6. That Sunday, May 27, Mr. Black was placed on restrictive housing status pending review after he refused his dorm assignment. *Id.* at ¶ 8.

Mr. Black testified that while he was in restrictive housing, he asked staff multiple times for grievance forms but never got any help. *Id.* at 41, ¶ 14. Because he was in the restrictive housing unit, he was reliant on staff to provide him the grievance forms. *Id.* at ¶ 15. He wrote letters to then-grievance specialist Mark Staff, Warden Knight, and Assistant Warden Pretorius but received no response. *Id.* at ¶¶ 16, 19. Mr. Black saw unit team manager Mr. Turner, but Mr. Turner wouldn't speak to him. *Id.* at ¶ 17. His case manager Tommy Fulford "would always say he would come back tomorrow" but never did. *Id.* at ¶ 18. Mr. Black was in restrictive housing for the duration of the timeframe in which a grievance would have been timely. *Id.* at ¶ 13.

### III. Discussion

The defendants argue that Mr. Black failed to exhaust his available administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), before he filed this lawsuit. The PLRA requires that a prisoner exhaust his available administrative remedies before bringing a suit concerning prison conditions. 42 U.S.C. § 1997e(a); *see Porter v. Nussle,* 534 U.S. 516, 524-25 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 532 (citation omitted).

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo,* 548 U.S. 81, 90-91 (2006)

4

(footnote omitted). "To exhaust available remedies, a prisoner must comply strictly with the prison's administrative rules by filing grievances and appeals as the rules dictate." *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020).

Mr. Black does not dispute that he did not file any grievances related to the conditions of the dry cell, but he argues that the grievance process was unavailable to him because prison staff refused to provide him grievance forms when he requested them. While a prisoner "must exhaust available remedies," he "need not exhaust unavailable ones." *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016). An administrative procedure is unavailable when 1) the process operates as a "simple dead end," 2) when it is so opaque that it is incapable of use, and 3) when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859–60. It is the defendants' burden to establish that the administrative process was available to Mr. Black. *See Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015) ("Because exhaustion is an affirmative defense, the defendant must establish that an administrative remedy was available and that [the plaintiff] failed to pursue it.").

In their replies, both the Medical Defendants and the State Defendants argue that Mr. Black has failed to show that the grievance process was unavailable to him. First, the Medical Defendants argue that Mr. Black provided no evidence beyond his own sworn affidavit to support his argument that he could not access grievance forms. Dkt. 55 at 2. But sworn testimony is competent evidence at summary judgment that must be considered by the Court. *See, e.g.*, *McKinney v. Office of Sheriff of Whitley Cnty.*, 866 F.3d 803, 814 (7th Cir. 2017).

Second, both the Medical and State Defendants highlight that Mr. Black had writing utensils and paper while in restricted housing to write staff letters. Dkt. 55 at 2 and dkt. 56 at 2. But compliance with the grievance process requires completing State Form 45471, dkt. 43-3 at 9,

5

so the availability of blank paper does not get Mr. Black closer to completing the grievance process "as the rules dictate." *Reid*, 962 F.3d at 329. And although the defendants complain that Mr. Black did not include copies of the letters he sent to the grievance counselor or wardens, they do not explain how he should have submitted copies of letters that were sent out but never responded to.

Third, the defendants argue that some of Mr. Black's exhibits contradict his assertion that staff ignored his requests for grievance forms. Mr. Black included a "Segregation/Detention Rounds Flow Sheet" which shows that staff observed him on their rounds through the segregation unit from May 28 to May 31. Dkt. 54-1 at 14. For each date, the box labeled "AWAKE AND VERBAL NO COMPLAINTS" is checked. *Id.* He also includes a medical record from an "initial restrictive housing review" encounter with nurse Toni Jordan on May 27 in which he "offer[ed] no complaints." [2] *Id.* at 11. Neither of these documents defeats Mr. Black's claim that he was unable to obtain grievance forms from correctional staff. Mr. Black's interaction with Nurse Jordan seemed to consist of a basic health screening upon his placement in segregation. *Id.* at 13 ("Comments: on meds on reg diet denies injury no apparent injury noted denies suicidal thoughts denies thoughts of hurting self or others Okay for seg placement."). Mr. Black did not testify that Nurse Jones refused to give him a grievance form, but that correctional staff responsible for the forms refused. The segregation flow sheet is similarly of little probative value, as it is not clear who initialed the form.

The defendants do not present any evidence disputing Mr. Black's contention that he was reliant on prison staff to deliver grievance forms to him while he was in the restrictive housing unit. Thus, the Court is left with Mr. Black's undisputed evidence that he attempted to obtain

---

[2] Why Mr. Black included these documents isn't clear; he does not refer to them in his affidavit as he does other exhibits.

grievance forms from prison staff, but they refused to assist him. In short, prison staff thwarted Mr. Black's attempt to pursue the grievance process, rendering it unavailable to him. *Ross*, 136 S. Ct. at 1860; *Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004) (holding grievance process is not available if prison staff refuse to provide inmates with grievance forms when requested). Accordingly, the defendants' motions for summary judgment, dkt. [41] and [46], are **denied**.

### IV. Rule 56(f) Notice and Further Proceedings

The current record before the Court shows that Mr. Black is entitled to summary judgment on the defendants' affirmative defense of exhaustion because the undisputed evidence shows that the administrative remedy process was unavailable to Mr. Black. Therefore, pursuant to Rule 56(f)(1), the Court gives the defendants notice of its intent to grant summary judgment in Mr. Black's favor on this issue. The defendants shall have **through July 7, 2021,** in which to respond to the Court's notice. Alternatively, they may withdraw their affirmative defense by this date.

**IT IS SO ORDERED.**

Date: 6/22/2021

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

RICK ALLEN BLACK
267148
PLAINFIELD - CF
PLAINFIELD CORRECTIONAL FACILITY
Inmate Mail/Parcels
727 MOON ROAD
PLAINFIELD, IN 46168

Douglass R. Bitner
KATZ  KORIN CUNNINGHAM, P.C.
dbitner@kkclegal.com

Adrienne Nicole Pope
INDIANA ATTORNEY GENERAL
adrienne.pope@atg.in.gov

Angela Marie Rinehart
KATZ  KORIN CUNNINGHAM, P.C.
arinehart@kkclegal.com

Sarah Jean Shores
KATZ  KORIN CUNNINGHAM, P.C.
sshores@kkclegal.com